IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| DONALD CRAIG, <br><br> Plaintiff, <br><br> vs. <br><br> MARY DICK, MIKE SAVALA, JERRY BURT, <br><br> Defendant. | No. C05-3040-LRR <br><br> INITIAL REVIEW ORDER |

## I. INTRODUCTION

This matter is before the court pursuant to the plaintiff's application to proceed in forma pauperis. The Clerk of Court filed such application on July 5, 2005. Along with his application to proceed in forma pauperis, the plaintiff submitted a complaint and an application for appointment of counsel.

Based on the application with certificate of inmate account, in forma pauperis status is granted. 28 U.S.C. § 1915. The Clerk of Court is directed to file the complaint without the prepayment of the filing fee. The plaintiff is directed to submit $3.99 as his initial partial filing fee. 28 U.S.C. § 1915(b)(1). In addition, the plaintiff is directed to submit monthly payments of 20 percent of the preceding month's income credited to his inmate account until the $250.00 filing fee is paid. 28 U.S.C. § 1915(b)(2). *See also* 28 U.S.C. § 1914(a) (requiring $250.00 filing fee). The agency having custody of the plaintiff is directed to forward payments from his inmate account to the Clerk of Court each time the amount in the account exceeds $10 until the filing fee is paid. 28 U.S.C. § 1915(b)(2).

## II. THE PLAINTIFF'S COMPLAINT

Currently confined at the Fort Dodge Correctional Facility in Fort Dodge, Iowa, the plaintiff, proceeding pro se, submitted a complaint under 42 U.S.C. § 1983 to redress the alleged deprivation of his constitutional rights. Jurisdiction is predicated on 28 U.S.C. § 1343(a)(3). Under 28 U.S.C. § 1391(b), venue appears proper as two of the defendants are located in this district and the events giving rise to the instant action occurred in this district.

In his complaint, the plaintiff appears to assert a failure to secure inmate's allowance claim and a deliberate indifference claim. When reciting the facts of his case, the plaintiff specifically states:

> I worked for a private sector business run out of this prison. I was employed as a telemarketer. The prison considered it a full-time job and prohibited me from working any other institutional job. The private sector business owner one day just up and quit, abandoning his computer and other materials. The private sector business owner then put a "stop payment" on my paycheck. I worked all these hours plus nearly all the next month's and did not get paid. The defendants have had similar telemarketing firms that went broke and quit, making the inmates wait to get their pay. The defendants went to a lot of "legal work" when I first got the job. I signed papers, and contracts for "deductions" which they "notarized" my signature to "legally bind" me so they (the defendants) were assured to get "my money" to apply it towards "pay for stay", "rest and remainder", "victim restitution", and "federal filing fees", and "10% mandatory savings (gate fee)" out of my paycheck from the private sector business. The defendants actively recruited this particular private sector business for a long time and finally convinced him that us inmates were capable of doing the work, the defendants were so wrapped up into getting this particular private sector business to come to this prison that they failed to put forth safeguards "legal and

2

binding" into place to protect me from injury. Defendants failure to require the private sector business to "post surety bond", "insurance policy", or "cash security deposit" to insure that I received all my money[–Social Security, FICA, Medicaid contributions, 20% victims's restitution so I can get my voting rights restored, 20% federal filing fees and 10% mandatory savings (gate fee)–] was with deliberate indifference to me and my property interests. The only money I got was 20%, and I had to file grievances and complaints to eventually get it. The I.D.O.C. eventually gave me $86.00 or so, but failed to make the above listed contributions/financial applications to my Social Security, victim's restitution, federal filing fees and gate fees. Whereas, had the defendants went to all [of] the "legal binding" safeguards they did with me to guarantee they got my money (for "pay for stay", "rest and remainder") they were deliberately indifferent to my interests and failed to protect my interests "as my power of attorney" by their failure to put into place those same "legal binding" safeguards when the recruited the private sector business. And the defendants had this happen to them before, so they should have known it could happen again and not an isolated incident. Now eventually, after threats from the Iowa Attorney General's Office, those past failed private sector businesses made full payment to their inmate employees here at this prison. It has been nearly a year now and nothing more has been done that I'm aware of to get me my money. And that $86.00 or so is all I got. My injuries are with cruel and unusual punishment. My injuries are those unpaid contributions as set forth above, emotional pain and suffering, further mental duress for all the months I've waited, the emotional pain and suffering when the defendants took all my money for the "stop payment" on my payroll check, and the mental anguish for going some 30 days without soap, shampoo, toothpaste, razors, deodorant, legal envelopes and commissary items I could enjoy.

For the alleged violation of his constitutional rights, the plaintiff asks the court to:

> Award compensatory damages, punitive damages, attorney fees, interest at the maximum legal rate, court costs and further relief the court deems equitable and just. Shut down all I.D.O.C. private sector businesses throughout the entire DOC until safeguards such as those listed herein are in full force. Appoint me a lawyer. I am not an attorney. I cannot afford to hire one, [this is] a complex case with multiple defendants [and] requires extensive discovery and I've demanded a jury trial. In support of shutting down all private sector businesses throughout the entire Iowa Dept. of Corrections until safeguards (legal binding) such as those listed herein [. . .] are addressed and in full force (injunction) as follows: 1. There is an actual danger of future violations, it is possible that I may once again work for private sector businesses either here at this prison or get transferred and work at another prison's private sector business. 2. There currently exists no adequate remedy at law. 3. An award of damages or other relief will not adequately protect me. 4. I will suffer irreparable injury without an injunction. 5. I will suffer more without an injunction than prison officials will suffer if the injunction is granted. That the balance of hardships favor the plaintiff. 6. That there is a likelihood that the plaintiff will succeed on the merits of this action. 7. It is in the public's interest to grant the injunction. It is always in the public interest for government officials, including prison personnel, to obey the Constitution and other laws. [. . .].

In addition to his complaint, the plaintiff submitted several exhibits. Those exhibits, among other things, include: 1) an application for private sector work which the plaintiff signed on July 21, 2004; 2) documents which indicate the plaintiff started to work for Minnesota Global Marketing, Inc., on July 23, 2004; 3) an inmate request form which is dated September 8, 2004 and asks that the $78.50 previously paid for "rest and remainder" be given to the plaintiff until Minnesota Global Marketing, Inc., pays his allowance; 4) the plaintiff's daily transaction summary which indicates transactions were performed on his

4

behalf on September 16, 2004 as a result of deposits from Minnesota Global Marketing, Inc.; and 5) a September 21, 2004 memo which is from Warden Jerry Burt. With respect to the plaintiff's application for private sector work, it states, in relevant part, the following:

> I hereby agree voluntarily to participate in the Federal Prison Industry Enhancement Act (PIE) project and Section 904.809 of the Code of Iowa. I further agree voluntarily and in advance to the deductions listed in items 1, 2, 3, 4, and 5 below made from gross wages, unless otherwise specified, as well as to all other financial arrangements made as to earned Federal Prison Industry Enhancement Act (PIE) wages.
>
> I understand that I will be screened for employment by the Department of Corrections and, if approved, will be interviewed for hire by Minnesota Global Marketing, Inc., a private sector company.
>
> If I am employed by Minnesota Global Marketing, Inc., I agree as a condition of employment to the following.
>
> 1. Deductions will be made from my wages to be distributed as follows:
>
>> A. Payroll deductions as required by law, which may include but are not limited to state and federal income taxes and social security assessments. You are allowed one (1) deduction unless you can produce a certified document for additional deductions.
>>
>> B. An amount legally obligated to pay by court order for the support of dependents being child support or family support. If a court order does not exist dependent support will not be taken.
>>
>> C. Twenty percent (20%) of gross wages deposited to my inmate account. Of the 20% of gross wages deposited to my inmate account the following, IF IT APPLIES, will be deducted from my inmate account:

> 20% to federal restitution and 10% to savings up to a maximum of $100. IF IT APPLIES, deductions for state and federal court filing fees and DOC sanctions will be taken from the remaining amount deposited to my inmate account.
>
> D. Five percent (5%) of gross wages deducted for the victim compensation fund.
>
> E. Fifteen percent (15%) of gross wages deducted for state restitution. If restitution does not exist no amount will be taken.
>
> F. Any amount left after the above deductions will go to the General Fund as provided for in the Code of Iowa.
>
> [. . .]
>
> I have read and understand the foregoing, and if employed, I agree to abide by the wage distributions set out above. I understand that my employment is "at will" and that I am not guaranteed that my employment will have any specific duration.

Concerning the September 21, 2004 memo, Warden Jerry Burt wrote:

> A portion of the money from your wages owed by MGM that would normally be deposited into your account, 20% of your gross wages, has been deposited into your account. The 20% payment is being paid by IPI on its own initiative to reduce the hardship caused by the unexpected departure of MGM (all normal deductions from the 20% payment to your account will be made). MGM is ultimately responsible for the full amount of your wages. We realize that this payment does not fully compensate you for all of the wages and credits that would have been deducted from your pay. The Office of the Attorney General will continue its efforts on your behalf. If payment for the unpaid wages is ever received from MGM, we will deduct any amount already paid to you by IPI from any subsequent recovery.

6

The court now turns to discuss the merits of the plaintiff's complaint.

### III. DISCUSSION

### A. Standard of Review

A pro se complaint must be liberally construed. *See Hughes v. Rowe*, 449 U.S. 5, 9, 101 S. Ct. 173, 66 L. Ed. 2d 163 (1980); *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972) (per curiam); *Smith v. St. Bernards Reg'l Med. Ctr.*, 19 F.3d 1254, 1255 (8th Cir. 1994). A court, however, can dismiss at any time a complaint filed in forma pauperis if the complaint is frivolous, malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1). A claim is "frivolous" if it "lacks an arguable basis in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989); *accord Cokeley v. Endell*, 27 F.3d 331, 332 (8th Cir. 1994). Accordingly, a court may review the complaint and dismiss sua sponte those claims that are premised on meritless legal theories or that clearly lack any factual basis. *See id*. *See also Denton v. Hernandez*, 504 U.S. 25, 27, 112 S. Ct. 1728, 118 L. Ed. 2d 340 (1992).

### B. Overview of Civil Rights Claims Under 42 U.S.C. § 1983

Title 42 U.S.C. § 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

42 U.S.C. § 1983 was designed to provide a "broad remedy for violations of federally protected civil rights." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 685, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). However, 42 U.S.C. § 1983 provides no substantive rights. *Albright v. Oliver*, 510 U.S. 266, 271, 114 S. Ct. 807, 127 L. Ed. 2d 114 (1994); *Graham v. Conner*, 490 U.S. 386, 393-94, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989); *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617, 99 S. Ct. 1905, 60 L. Ed. 2d 508 (1979). "One cannot go into court and claim a 'violation of [42 U.S.C.] § 1983' — for [42 U.S.C.] § 1983 by itself does not protect anyone against anything." *Chapman*, 441 U.S. at 617. Rather, 42 U.S.C. § 1983 provides a remedy for violations of all "rights, privileges, or immunities secured by the Constitution and laws [of the United States]." 42 U.S.C. § 1983. *See also Albright*, 510 U.S. at 271 (42 U.S.C. § 1983 "merely provides a method for vindicating federal rights elsewhere conferred"); *Graham*, 490 U.S. at 393-94 (same); *Maine v. Thiboutot*, 448 U.S. 1, 4, 100 S. Ct. 2502, 65 L. Ed. 2d 555 (1980) ("Constitution and laws" means 42 U.S.C. § 1983 provides remedies for violations of rights created by federal statute, as well as those created by the Constitution). Thus, to state a claim under 42 U.S.C. § 1983, a plaintiff must establish: (1) the violation of a right secured by the Constitution or laws of the United States, and (2) the alleged deprivation of that right was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988).

### C. The Plaintiff's Claims

#### 1. *Failure to Secure Inmate's Allowance Claim*

Based on the plaintiff's application for private sector work, it is clear the plaintiff voluntarily agreed to be employed by Minnesota Global Marketing, Inc., a private sector employer. It is also clear from his application that the plaintiff acknowledged his

employment would be subject to restrictions. Indeed, the application references Iowa Code § 904.809. Such statute, in relevant part, provides:

> 1. The following conditions shall apply to all agreements to provide private industry employment for inmates of correctional institutions:
>
> [. . .]
>
> c. Inmates shall receive allowances commensurate with those wages paid persons in similar jobs outside the correctional institutions. [. . .]
>
> [. . .]
>
> 5.a. An inmate of a correctional institution employed pursuant to this section shall surrender to the department of corrections the inmate's total earnings less deductions for federal, state, and local taxes, and any other payroll deductions required by law.
>
> The inmate's employer shall provide each employed inmate with the withholding statement required under section 422.16, and any other employment information necessary for the receipt of the remainder of an inmate's payroll earnings.
>
> b. From the inmate's gross payroll earnings, the following amounts shall be deducted:
>
>> (1) Twenty percent, to be deposited in the inmate's general account.
>>
>> (2) All required tax deductions, to be collected by the inmate's employer.
>>
>> (3) Five percent, to be deducted for the victim compensation fund created in section 915.94.
>
> c. From the balance remaining after deduction of the amounts under paragraph "b", the following amounts shall be deducted in the following order of priority:

> > (1) An amount which the inmate may be legally obligated to pay for the support of the inmate's dependents, which shall be paid through the department of human services collections services center, and which shall include an amount for delinquent child support not to exceed fifty percent of net earnings.
>
> > (2) Restitution as ordered by the court under chapter 910.
>
> > (3) The department may retain up to fifty percent of any remaining balance after deductions made under subparagraphs (1) and (2) if the remaining balance is from an inmate employed in a new job created on or after July 1, 2004. The funds shall be used to staff supervision costs of private sector employment of inmates at correctional institutions. Funds retained pursuant to this subsection shall not be used for administrative costs of Iowa state industries.
>
> > (4) Any balance remaining after the deductions made under subparagraphs (1), (2), and (3) shall represent the costs of the inmate's incarceration and shall be deposited in the general fund of the state.
>
> d. Of the amount credited to the inmate's general account, the department shall deduct an amount representing any other legal or administrative financial obligations of the inmate.

*See* Iowa Code § 904.809. As previously explained, in order for the plaintiff to prevail, he must show that the defendants' actions deprived him of a right secured to him by constitutional or federal law. *See West*, 487 U.S. at 48. The plaintiff's theory of the case is that the defendants violated his rights when they failed to include in their agreement with the private sector employer a provision which required such employer to post a "surety bond," an "insurance policy" or a "cash security deposit" so as to ensure he would receive

payment for the hours he worked. For the following reasons, the plaintiff's theory does not amount to a constitutional or federal violation.

First, the plaintiff's action essentially is one for an allowance owed to him. A state prisoner, however, does not have a constitutional right to be paid for his labor. *Sigler v. Lowrie*, 404 F.2d 659, 661 (8th Cir. 1968). It is readily apparent that any allowance received pursuant to Iowa Code § 904.809 is by the grace of the state. If the plaintiff had any "right" to payment for his services, it is derived from the laws of Iowa, and is not a right secured by the Constitution or laws of the United States within the meaning of 42 U.S.C. § 1983. *Id.*; *see also Jennings v. Lombardi*, 70 F.3d 994, 995-96 (8th Cir. 1995) (holding prisoner had no property interest in wages because state law did not create an entitlement to compensation and because its regulation described prisoner wages as "a positive behavior incentive"); *Robinson v. Cavanaugh*, 20 F.3d 892, 894 (8th Cir. 1994) (concluding wage claim fails because he cannot point to any state law that grants him a property interest); *Hrbek*, 787 F.2d at 415-17 (concluding prisoner had no constitutionally protected property right to full amount of wages earned while incarcerated); *Manning v. Lockhart*, 623 F.2d 536, 538 (8th Cir. 1980) (characterizing inmates's claim regarding the non-payment of wages for his work as an unconstitutional deprivation of property or other fundamental right and concluding it warrants no relief under 42 U.S.C. § 1983); *cf. Christiansen v. Clarke*, 147 F.3d 655, (8th Cir. 1998) (concluding prisoner did not have a right to work release because work release is a privilege that may be granted at the director's discretion, and, consequently, prisoner did not have a right to full amount of salary).

Second, the plaintiff's alleged injury occurred as a result of the private sector employer's failure to pay him an allowance commensurate with those wages paid persons in similar jobs outside the Fort Dodge Correctional Facility. The failure to pay promised

11

wages constitutes a beach of contract and, thus, is not actionable under 42 U.S.C. § 1983. *Manning*, 623 F.2d at 538 (construing inmates's claim regarding the non-payment of wages for his work as a breach of contract claim and concluding it is not one of constitutional dimension). To the extent the plaintiff alleges he had a contract with the defendants and they breached that contract, such allegation does not amount to a constitutional or federal violation. *Id.* (concluding state prisoner has no cause of action under 42 U.S.C. § 1983 where he protests the non-payment of wages for his prison labor).[1]

Third, despite the fact that the defendants informed the plaintiff that the sole responsibility of full payment for his labor rested with the private sector employer, the plaintiff doggedly maintains that the defendants are ultimately liable for the private sector employer's failure to pay. Stated differently, the plaintiff insists on bringing this action against Iowa Department of Corrections officials, rather than the private industry employer. "'Section 1983, of course, requires a causal relationship between a defendant's conduct and a plaintiff's constitutional deprivation. Absent such a relationship, the defendant is entitled to dismissal.'" *Gordon v. Hansen*, 168 F.3d 1109, 1113 (8th Cir. 1999) (quoting *Latimore v. Johnson*, 7 F.3d 709, 716 (8th Cir. 1993)) (citing *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990)). The court is unable to conclude that the defendants' failure to secure the plaintiff's allowance is the proximate cause of his deprivation. Rather, the proximate cause of the plaintiff's deprivation is the decision by the private sector employer not to pay the plaintiff his allowance.

Finally, the record reveals that the defendants made the appropriate deductions from his allowance in the past and they would have done so in the future if the private sector

---

[1] The court notes that all of the parties he names as defendants are residents of Iowa, and, consequently, diversity jurisdiction does not exist. *See* 28 U.S.C. § 1332(a).

employer made subsequent payments. The defendants fully complied with the requirements of Iowa Code § 904.809. In fact, when the private sector employer failed to pay the plaintiff his allowance, they did more than the statute requires.[2] Even if the defendants did not comply with Iowa state law–Iowa Code § 904.809, the plaintiff could not maintain a 42 U.S.C. § 1983 action because he has not shown that such failure violates a right secured by the Constitution or federal law. An incorrect application of a state statute, without more, is not sufficient to establish a violation of a federal or constitutional right. *See Collins v. Bellinghausen*, 153 F.3d 591, 596 (8th Cir. 1998); *Bagley v. Rogerson*, 5 F.3d 325, 328 (8th Cir. 1993); *Buckley v. Barlow*, 997 F.2d 494 (8th Cir. 1993).

## *2. Deliberate Indifference Claim*

The plaintiff claims the deprivation of his private sector wages prevented him from purchasing "soap, shampoo, toothpaste, razors, deodorant, legal envelopes and commissary items [that he] could enjoy" violates his right to be free of cruel and unusual punishment. In order to articulate a cause of action under the Eighth Amendment, a prisoner must allege that he has been denied "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981). *See also Phillips v. Norris*, 320 F.3d 844, 848 (8th Cir. 2003) (reiterating standard). Toiletries, such as soap, shampoo, toothpaste, razors, and deodorant, supplemental commissary items, and legal envelopes purchased with private sector work

---

[2] With respect to the uncompensated work he performed, the plaintiff acknowledges that he received $86.00 from the defendants or approximately 20% of $427.46. By making such gratuitous deposit into the plaintiff's account, the defendants were attempting to alleviate any hardship he might experience as a result of the private sector employer's unexpected departure. Under Iowa Code § 904.809, no additional portion of the $427.46 allowance would have been deposited into the plaintiff's general account.

13

wages may well make prison life more tolerable or enjoyable, but the plaintiff has made no showing that they are a "necessity of life" at the Fort Dodge Correctional Facility or that he has suffered any illness, hardship or injury because he has been unable to purchase them. Accordingly, the denial of these items does not rise to the level of a constitutional violation. *See Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) (concluding inmate's allegation that the defendants continued deduction of pay from his prison account pursuant to a restitution order prevented him from obtaining certain personal hygiene items was insufficient to state a claim for cruel and unusual punishment).[3]

## IV. CONCLUSION

The court believes in forma pauperis status is warranted. With respect to the plaintiff's claims, the court finds he has failed to state a claim upon which relief could be granted or the claim is frivolous. Accordingly, it is appropriate to dismiss this action pursuant to 28 U.S.C. § 1915A. Having concluded that dismissal is warranted, the court deems it appropriate to deny as moot the application for appointment of counsel.

**IT IS THEREFORE ORDERED**:

1) The plaintiff's application to proceed in forma pauperis status is granted.

---

[3] With respect to the assertion that he could not purchase legal envelopes, the plaintiff does not allege that he suffered an actual injury. *Christopher v. Harbury*, 536 U.S. 403, 413-16, 122 S. Ct. 2179, 2186-87, 153 L. Ed. 2d 413 (2002) (reiterating that a plaintiff must demonstrate an actual or imminent injury impairing his or her ability to prosecute a non-frivolous claim in order to establish a cause of action for denial of access to the courts); *Bear v. Kautzky*, 305 F.3d 802, 806 (8th Cir. 2002) (reaffirming actual injury requirement); *Moore v. Plaster*, 266 F.3d 928, 933 (8th Cir. 2001) (citing *Klinger v. Dep't of Corrections*, 107 F.3d 609, 617 (8th Cir. 1997) for the proposition that a plaintiff must suffer an actual injury to succeed on an access to the courts claim).

2) The Clerk of Court is directed to file the complaint without the prepayment of the filing fee.

3) The agency having custody of the plaintiff is directed to submit $3.99 as his initial partial filing fee and to submit monthly payments of 20 percent of the preceding month's income credited to his inmate account until the $250.00 filing fee is paid.

4) The plaintiff's complaint is dismissed pursuant to 28 U.S.C. § 1915A.

5) The plaintiff's application for appointment of counsel is denied as moot.

**DATED** this 28th day of July, 2005.

LINDA R. READE
JUDGE, U. S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA

TO:   WARDEN/ADMINISTRATOR
      Fort Dodge Correctional Facility, Fort Dodge, Iowa

## NOTICE OF COLLECTION OF FILING FEE

You are hereby given notice that Donald Craig, #1091162, an inmate at your facility, filed the following lawsuit in the United States District Court for the Northern District of Iowa: *Craig v. Dick, et al.*, Case No. C05-3040-LRR. The inmate was granted in forma pauperis status pursuant to 28 U.S.C. § 1915(b), which requires partial payments of the $250.00 filing fee. Based on the prisoner account information, the court has assessed an initial partial filing fee of $3.99, which the inmate must pay now to the Clerk of Court. 28 U.S.C. § 1915(b)(1).

> After payment of the initial partial filing fee, the prisoner shall be required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. The agency having custody of the prisoner shall forward payments from the prisoner's account to the clerk of court each time the amount in the account exceeds $10 until the filing fees are paid.

28 U.S.C. § 1915(b)(2). If the inmate currently does not have sufficient funds to pay the initial partial filing fee, you must monitor the account and send payments to the Clerk of Court according to the system provided in 28 U.S.C. § 1915(b)(2).

Please make the appropriate arrangements to have these fees deducted and sent to the court as instructed.

/s/ Mary Jehle (Deputy) 7/28/05

Pridgen J. Watkins
U.S. District Court Clerk
Northern District of Iowa